Ellsworth, J.
We are all satisfied tnat there is error in the judgment of the superior court; but as this does not necessarily make an end of the case, it may beywell for us to state our views upon the questions so ably and elaborately argued before us.
A majority of the court are of opinion that the petitioners, as foreign assignees, can not of right maintain their suit against these respondents ; either ’on principles of the common law or under the provisions of the statute of 1854.
We suppose, however, that in the English courts, certainly from the time of the American revolution, the course of decisions is well nigh uniform, that a foreign assignee under a bankrupt law can sue in their courts, as if he was assignee under their own law. They hold this principle on the ground that a general assignment under the statute is equivalent to a special assignment by the party, and then, applying the doc- [ *284 ] trine *of international law, that, what constitutes a transfer in the place of the owner’s residence constitutes a good transfer every where, they make a good and perfect legal title in the assignee. But the courts in this country have not given their assent to this course of argument, though some of our jurists think it is the correct one. The law of the American courts is generally quite otherwise, as an absolute doctrine of the law. They seem to class foreign assignees with foreign executors, administrators, guardians, conservators and selectmen, who, having title, right or power by mere operation of law, have it co-extensive only with the sovereignty of the state which gives it. Hence it follows that such title, right and power have no existence in another sovereignty, and are not of course recognized, though they are admitted in certain cases as a matter of courtesy. This doctrine is familiar to every lawyer in the case of foreign executors and administrators, and we perceive no reason why it is not equally true as to foreign assignees. They are mere agents of the law—instruments of the government to settle the affairs of a deceased or bankrupt debtor. And, m cur view, there is essentially no difference, whether, in consequence of an act of bankruptcy, as in England, the bankrupt's estate is forced from him, or he sets the law in motion himself by a conveyance in bankruptcy in the first instance. It is a local governmental proceeding.
This doctrine has often been recognized and concurred in in this state, and we believe has never been called in question. In *233 the case of Taylor v. Geary, Kirby, 313, our highest court held, upon solemn argument, that the commission of bankruptcy against the defendants in England did not secure their effects here, but that they remained as before, transferable by them and open to the attachment of their creditors, as well British as American. The same general doctrine is held in the case of Riley v. Riley, 3 Day, 74. Our courts have never, so far as we know, recognized the absolute right of foreign assignees to institute suits here in their own names, though it perhaps may be allowed as a mere act of courtesy, as has often been done elsewhere, if there be no *adverse [ *285 ] interest to be affected; but it is never allowed to defeat creditors, be the place of their residence where it may ; and especially not if their attachments precede the assignment.
Among the most important cases on this subject, we mention those of Abraham v. Plestoro, 3 Wend., 550, Hoyt v. Thompson, 1 Seld., 320, Booth v. Clark, 17 How., 338, and Milne v. Morton, 6 Binn., 353; in which cases the subject is examined with great learning and ability, and all the cases in the books are referred to. The main doctrine will be found to be much as laid down in the case in Kirby, before mentioned, with this addition perhaps, that by mere courtesy foreign assignees are allowed to sue in their own names, where there is no attachment, lien or claim adverse to the assignment.
Even in the English view of a transfer by bankruptcy, it is not easy to see how a foreign assignee really sues in his foreign representative character, since, in that view, the assignment is held to be a transfer as much as if it was a private sale, in which latter case we know the vendee gets a personal title the world over. An executor gets such a title to chattels which are within the state of the decedent’s domicil, so that they can, in case of their being stolen or lost, be reclaimed by the executor as his own property and in his own name. The domicil of a person in life, wherever he is, by a legal fiction draws the property to himself, so that he is said to be possessed of it there; but this is not true when the owner dies, having no longer any place of domicil. A statute representative does not universally succeed by legal operation to his title and possession, but as such he takes tbe property only which ■ is within the state. If he is the principal representative, such as the principal executor or administrator, or is a legal assignee, and wishes to obtain the property which is abroad, he must go there, and by an ancillary administration or appointment get authority, or employ some one else to do so in his own name, and remit what he receives to the principal executor, &c. If indeed the principal *234 ^executor or the- assignee go there himself, and, without acquiring local authority, collects a debt or receives property belonging to the estate, it is- well enough, we suppose, if the creditors or legatees• there do not interpose and object; for, in such a case, the same end is accomplished which could be reached through an ancillary administration, and the law does not require any unnecessary formality and expense, but looks at the substance of the thing. Holcomb v. Phelps, 16 Conn., 127, 133. Lawrence v. Kitteridge, 21 id., 582. Story Confl. Laws, § 404.
We can not think-it necessary to cite cases to shew that, in strictness, a mere license or power conferred by statute is only co-extensive with the sovereignty from which the license or power emanates. In England administration may be granted in the province of Canterbury or in that of York, or it may be granted in certain jurisdictions denominated “ royal peculiars,” like the city of London, which are entirely independent of the ecclesiastical courts, and administration can be taken out only when there are bona notabilia. 1 Wms. Exrs., 258. If it be taken out elsewhere, it is utterly void. Movables are assets where they happen to be at the decease of' the owner ; chattels real, where the land is situate; judgments and the like, where the records are kept; bonds, &c., where the deeds are kept; and simple contracts, including notes and bills, where the debtors reside. Story Confl. Laws, § 514.
We will not dwell longer on the point, and will only remark, in leaving it, that in no view of the case will a bill of interpleader lie at the common law, for such a bill lies only in behalf, and on the application, of the stakeholder, while the present case is not of that character, nor does it resemble such a case in any respect whatever.
Let us then inquire if the statute of 1854 affords relief. Does that authorize foreign assignees to sue in their own names, by way of interpleader or otherwise? We have already said that a majority of the court think that it does not; though the language of the act, if construed literally, is broad enough for this purpose. Those of us who- entertain .[ *287 ] *'this opinion, believe that the legislature, in passing the act, had-nothing of this kind in view, and -think that we should not, be justified; in giving the act the broad construction claimed by the plaintiff’s counsel-. Nor is there any necessity for resorting to such a construction of the act, for at all times the equitable owner of a debt which has been attached has the right to show his-title to- it in- his defense on the scire Jadas. Hartford Bank v. Barber, 9 Conn., 407. We con *235 ceive the object of this statute to be, to give a summary remedy in cases where the plaintiff comes into court, and has a right to come, as in other instances* at common law; We can not believe for one moment that the legislature, by this simple act of ordinary legislation, the object and aim of which are perfectly manifest, intended to repeal a great principle of international law, and open the courts to parties who had no standing or capacity in them before, whether at law or equity. But even were it otherwise doubtful, the circumstance that these persons come here to prosecute without the necessity of giving bonds for a faithful execution of their trust, would have weight with us in determining the construction of the statute. Without such security for their rights, our citizens might well complain that property should be allowed to be carried out of this jurisdiction and beyond their reach, and not only so, but there administered, in a foreign state, under laws different from our own.
But there is another equally serious and, in our judgment, fatal objection to this decree. The attaching creditors, by pursuing the steps of our law, certainly acquired a lien upon the debt due from Mr. Hubbard which no foreign proceedings under the bankrupt law of Massachusetts can destroy or impair, without allowing an extra-territorial effect to the law of that state in conferring title upon the assignees, which we can not do. The right of the attaching creditors to the lien obtained by their attachments being good here, must remain good, and we see not why they may not enforce that lien, by prosecuting their suits to judgment and execution, which' is the only possible mode of realizing any thing from the lien known to our law.
*We suppose we have no occasion at this time, and [ *288 ] perhaps ought not, to proceed further in expressing our views upon the case; for we do not know, even if the cases are re-entered in the superior court, that the plaintiffs will ever recover judgment therein. It is most earnestly contended that they can not, and that, if they do not, of course all controversy about the title to the debt due from Mr. Hubbard is at an end, and that even if judgment shall be recovered in the end it will amount to nothing substantial. We are not prepared to say how this may be, and what would be the effect of the discharge of Mason from his debts in Massachusetts if pleaded here, and especially upon this lien, which is good in Connecticut, and to reach which it is. said a conditional execution may be issued.
It seems to us, that if Mason himself shall appear in our court and answer to these attachment suits, or if the assignees shall *236 appear for him and prevent a recovery, it will put an end to his personal liability; but if judgment against him personally is prevented on the ground of his discharge in Massachusetts under proceedings in bankruptcy there, then, as is claimed, and we think with much force; a qualified judgment may be had, and execution issued against the property attached. Several cases where this has been done are cited by counsel, one in the circuit court of the United States in this circuit, that arose under the old bankrupt law of the United States, which contained a clause excepting liens, &c., and some others; more especially those of Davenport v. Tilton, 10 Met., 320, Ives v. Sturgis, 12 id., 463, and Peck v. Jenness, 7 How., 618.
And here again another question arises. Suppose the lien can be preserved to the attaching creditors and converted into money as above suggested, will or will not these creditors be held accountable for the money in Massachusetts, where all the parties reside, to the assignees of Mason ? or will the lien, being good in Connecticut, the situs of the property in question, have precedence every where? We leave the question with these suggestions for further inquiry, here or else- £ *289 ] *where, as the parties before us shall have occasion to make it in enforcing their rights.
There is manifest error in the decree below.
In this decision the other judges concurred; Sanford, J., with some doubt however whether the suit ought not to be entertained under the statute of 1854.
Judgment reversed.