Paine *v.* Lester.

———— ◆ ————

## George T. Paine *vs.* George S. Lester.

The plaintiff, a citizen of Rhode Island, attached in this state a debt due from a resident of this state to a corporation located in the state of Pennsylvania. Previous to the attachment the corporation had gone into insolvency under the insolvent laws of that state, and had under those laws made an assignment of all its effects to a trustee for the benefit of its creditors, and notice of the assignment had been given to the Connecticut debtor. Held that the trustee in insolvency did not acquire a title to the debt that was good against the attachment.

The giving effect in this state to the laws of a sister state or foreign country, in the case of the transfer of or succession to personal property within the limits of the state, is wholly an act of comity, and not a recognition of a right.

This comity our courts will extend where there is no interest of our own citizens, or of the citizens of other states who are seeking to avail themselves of the benefit of our laws, to be injuriously affected by it.

Where such interests exist, the courts owe a legal duty to the parties so interested which is more imperative than the demands of mere comity.

The citizens of other states coming into this state to avail themselves of our laws for the protection of their rights are, by the constitution of the United States, entitled to the same aid from our courts that one of our own citizens would be entitled to.

SCIRE FACIAS, upon a process of foreign attachment; brought to the Court of Common Pleas of New Haven County. The court made the following finding of facts —

Paine, the present plaintiff, a citizen of the state of Rhode Island, brought an action of assumpsit and debt on judgment to the September term, 1875, of the Court of Common Pleas for New Haven County, against the German Insurance Company, a corporation located in and existing under the laws of the state of Pennsylvania. Service of process in the action was made upon Lester, the present defendant, July 7th, 1875, as the agent of the company, and Lester was also summoned at the same time by process of foreign attachment to appear as the debtor of the company. The company appeared in the action by its attorney and pleaded and defended, and after trial judgment was recovered against the company for the sum of $507 15 debt and $52.45 costs of suit.

Prior to the bringing of the action Lester had been the general agent of the company, but such agency had been terminated by mutual consent, leaving unsettled accounts between them, which remained unsettled at the time he was served with process.

On the 2d of September, 1874, the company had made an assignment under the insolvent laws of the state of Pennsylvania, of all the "goods, chattels, effects, rights and credits and property of every kind, real, personal and mixed of said company," to Joseph Eichenlaub, Jr., "in trust to sell the same, and to pay the policy-holders and other creditors of said company their just demands in full if there be sufficient assets to satisfy the whole, if not, then pro rata according to their respective demands, without preference as between individuals;" of which assignment Lester was informed by the following communication: "Office of German Insurance Com-

pany, Erie, Penn., May 31, 1875. George S. Lester, Dear Sir:
—Herewith find certified copy of assignment made by German Insurance Company to Joseph Eichenlaub, Jr., assignee, Sept. 2, 1874. While at Boston Mr. C. W. Sproat assured me that he would have attachment restraining money in your hands due German Insurance Company lifted the first of the present week. Will you please, as soon as attachment is dissolved, forward to me remittance for balance due, so that I may be enabled to close your account so long protracted by this process against you. As stated to you, I am desirous of closing matters of this nature as speedily as possible, and thus more speedily make final settlement of the Ins. Co.'s affairs. In this you can aid me very much by promptness, as other matters of like nature will be closed within a few days. Yours, &c., Joseph Eichenlaub, Jr., assignee German Insurance Company, per J. P. Covert."

Subsequently, and after process had been served upon him, Lester received from the assignee of the company another letter asking for a settlement of his accounts with him as assignee, to which request the following reply was sent by Lester: "New Haven, Sept. 1st, 1875. Joseph Eichenlaub, Jr., Assignee of German Ins. Co., Erie, Pa., Dear Sir:— Yours, 30th ultimo, duly at hand, and finds Mr. Lester absent for about ten days. As soon as Mr. Sproat's attachment was lifted, Mr. G. T. Paine, of Providence, put on another, which leaves the situation as before. Respectfully, George E. Nettleton, for George S. Lester."

The defendant, Lester, made to the court a disclosure of indebtedness to the company. Execution was issued on the judgment obtained both against the company and the alleged debt to the company in the hands of Lester. Demand was made of Lester to satisfy the same, but he refused to satisfy the same or any part thereof, and the execution was returned unsatisfied and is still unsatisfied. The court found that Lester, at the time of the service upon him of the process of foreign attachment by the present plaintiff, had in his hands moneys which were due to the German Insurance Company, or to Eichenlaub as the assignee of the company, and still

held the same. Lester had cited in the insurance company and Eichenlaub as assignee, to defend the present suit, and they had appeared and assumed the defence.

Upon these facts the case was reserved for the advice of this court.

*T. C. Ingersoll*, for the plaintiff.

1. An assignment under the insolvent laws of another state gives the assignee no title to a debt due the assignor by a resident of this state which has been attached by a *bonâ fide* creditor in our courts, whether such creditor be or not a resident of this state. The principle is entirely irrespective of whether notice of the assignment was given or whether the attachment was prior or subsequent to the assignment. It is also irrespective of whether the proceedings in insolvency in the foreign state were *in invitum* or voluntary. All these points are expressly decided by *Upton* v. *Hubbard*, 28 Conn., 284, and although in that case the attachment was prior to the assignment, this fact was not considered material by the court in reaching its decision. See opinion at p. 285. Personal property represented by a debt has a sufficiently definite *situs* to give a court jurisdiction over the subject matter so far as to justify a judgment against the debt attached. Gen. Statutes, 410. It has a *situs* in other respects. *Holcomb* v. *Phelps*, 16 Conn., 134. There is no case in Connecticut holding that an assignment under the insolvent laws of another state would affect personal property here to the prejudice of a subsequent attaching creditor. Any case looking that way will be found, on examination, to have reference to another kind of an assignment than one under foreign insolvent laws. The principle is, that insolvent laws, like bankrupt laws, no matter how just, or how similar to our own, cannot have an extra-territorial effect. *Taylor* v. *Geary*, Kirby, 313; *Wickersham* v. *Nicholson*, 14 Serg. & R., 126. Such is the law in New York and the New England states. *Dalton* v. *Currier*, 40 N. Hamp., 237; *Ingraham* v. *Geyer*, 13 Mass., 147; *Fox* v. *Adams*, 5 Greenl., 253; *Holmes* v. *Remsen*, 20 Johns, 262; *Abraham* v. *Plestoro*, 3 Wend., 538; *Johnson* v. *Hunt*, 23 id.,

87; *Willitts* v. *Waite*, 25 N. York, 584; *Kelly* v. *Crapo*, 45 id., 86, 90, 97; 2 Kent Com., 405, 408. The assignment under the insolvent laws being thus likened to an assignment in bankruptcy, it makes no difference in principle whether the assignment is by the party himself or by the court; whether the debtor sets the law in motion or allows his creditors so to do, it is equally a transfer by such laws. The limitation of the exception to assignments *in invitum*, to. be found in some of the books, is to be explained by the fact that by the English bankrupt law there could be no voluntary proceeding. But by the Pennsylvania laws, and most of the insolvent laws of the different states, as well as by the United States bankrupt law, provision is made for voluntary applications. *Upton* v. *Hubbard*, supra, p. 284. In this case it is found that the assignment was made "under the insolvent laws of the state of Pennsylvania." What those laws are we find by referring to the statutes of that state. See Brightley's Purdon's Digest, vol. 1, pages 775 and 779. The 22d section of the insolvent laws as there given provides for the making of an assignment by the petitioning debtor, under an order of the insolvent court, of all his effects to trustees appointed by his creditors. The assignment thus made is in no proper sense an assignment voluntarily made, or an assignment at common law, but wholly a statutory one.

2. The only right which the authorities recognize in such foreign assignee in reference to property in another state, is the right to receive payment of the debt, and make good acquittance therefor to the debtor, in the absence of attaching creditors. *Upton* v. *Hubbard*, supra, p. 286; *Ingraham* v. *Geyer*, 13 Mass., 147. Where such payment has been made or possession formally delivered prior to the attachment, it has been held that then the subsequent attachment would be defeated. But here there was no pretense of payment, or even of the settlement of the unliquidated balance.

*H. D. Russell*, for the defendant.

1. The process of garnishment did not reach the moneys in Lester's hands, as Paine stands in the same relation to

Lester's indebtedness that the German Insurance Company does, and the same defences which could be used successfully if the German Insurance Company were plaintiffs will avail Lester as garnishee. *Boston Type Co.* v. *Mortimer*, 7 Pick., 166; *Hizen* v. *Emerson*, 9 id., 144; *Swamscott Machine Co.* v. *Partridge*, 25 N. Hamp., 369; *Strong* v. *Mitchell*, 19 Verm., 644.

2. The general doctrine relating to assignments in insolvency is, that the assignee takes all personal property abroad, as such property has no *situs*. 3 Parsons on Cont., 480; *Atwood* v. *Protection Ins Co.*, 14 Conn., 555, 562.

3. Assignments made in foreign countries are respected upon principles of comity. *Smith* v. *Buchanan*, 1 East, 6; *Milne* v. *Moreton*, 6 Binn., 361, 365; *Holmes* v. *Remsen*, 20 Johns., 262.

4. The courts of Connecticut have recognized assignments made in accordance with the laws of other states, even when they came in conflict with claims of citizens of this state. *Atwood* v. *Protection Fire Ins. Co.*, 14 Conn., 555; *Vanbuskirk* v. *Hartford Fire Ins. Co.*, id., 583; *Mead* v. *Dayton*, 28 id., 33; *Clark* v. *Conn. Peat Co.*, 35 id., 303.

5. The assignment in question was made under the insolvent laws of Pennsylvania, which are in entire harmony with our laws on the subject of insolvency.

6. The plaintiff is not a citizen of this state, and does not come within the exceptions sometimes recognized favoring citizens of the state where the debt sought to be attached is found.

GRANGER, J. Paine, the present plaintiff, on the 7th of July, 1875, brought an action of assumpsit against the German Insurance Company, and factorized Lester, the present defendant, as agent and debtor of the company. The insurance company was a corporation organized under the laws of the state of Pennsylvania, and located in that state. The company appeared in the action and made defense and judgment was rendered against it. Execution was issued on the judgment and demand made upon Lester for payment, but he

refused to satisfy the same and the present action of scire facias was brought. It is not denied by the defendant that he was indebted to the insurance company at the time of the attachment in a larger amount than the judgment recovered. But he claims, and the fact is found by the court, that in September, 1874, the insurance company went into insolvency under the insolvent laws of the state of Pennsylvania, making an assignment of all its effects to one Eichenlaub, in trust for its creditors, and that, on the 31st of May, 1875, written notice of the assignment was given to Lester; and the question is, whether by such assignment and notice the assignee acquired a title to the debt due from Lester, so that it could not be taken by the later attachment of the present plaintiff.

It is a general principle that personal property, having no situs, is subject to the law of the owner's domicil, and can be transferred by a voluntary assignment or sale made by him according to the law of his domicil. This well settled principle the courts of England have applied to transfers of personal property made by decrees of foreign courts, and to cases of succession to such property by will or intestacy under foreign laws, or by foreign bankrupt proceedings. *Potter* v. *Brown*, 5 East., 131. Judge Story, in reviewing the English decisions, which have not been in entire harmony on the point, comes to the conclusion that they sustain this broad application of the principle, and that the mode of transfer is immaterial, the only question being whether it is good by the law of the owner's domicil. Story's Conflict of Laws, § 404 *et seq.* Chancellor Kent came to the same conclusion after elaborately reviewing the English authorities, in the case of *Holmes* v. *Remsen*, 4 Johns. Ch. R., 460, and regarded the rule as thus established as founded on sound legal principles and the only reasonable one. He says (p. 484): "I entertain no doubt that the same rule is known and observed among the other nations of Europe. It is embraced by the general principle, so universally acknowledged by the civilians, that the distribution and disposition of personal property are governed by the law of the owner's domicil."

But neither the current of English decisions, nor the high

authority of Chancellor Kent, in the elaborate and learned opinion which we have referred to, seems to have made a permanent impression upon the jurisprudence of this country, and the weight of American authorities is in favor of a much more restricted application of the rule that personal property follows the law of the owner's domicil. While fully admitting this general principle, the American cases, instead of starting from it in entering upon the discussion, start from another equally well settled principle, that the laws of a state or country have no legal effect beyond the limits of its territory. This being so, they regard the giving effect to the laws of a sister state or foreign country, in the case of the transfer of or succession to personal property within their own limits, as wholly an act of comity, and not a recognition of a right. This comity they are prepared to extend where there is no reason to the contrary, especially if there is no interest of their own citizens or of the citizens of a sister state who are seeking to avail themselves of the protection of their laws, to be injuriously affected by such recognition. Story's Conflict of Laws, § 414; *Upton* v. *Hubbard*, 28 Conn., 274; *Fox* v. *Adams*, 5 Greenl., 245; *Ingraham* v. *Geyer*, 13 Mass., 146; *King* v. *Johnson*, 5 Harring., 31; *Hoyt* v. *Thompson*, 19 N. York, 207; *Willitts* v. *Waite*, 25 N. York, 587; *Kelly* v. *Crapo*, 45 N. York, 86; *Dunlap* v. *Rogers*, 47 N. Hamp., 281; *The Watchman*, Ware, 232; *Milne* v. *Moreton*, 6 Binney, 361, 365.

The remarks of the court in the case last cited are specially noteworthy, as coming from the state of Pennsylvania, the effect of whose insolvent proceedings is in question in this case. The court say, (per Yeates, J., p. 353,) " It is one thing to assert that assignees of bankrupts under foreign institutions should be allowed by the courtesy of nations to support suits as representatives of such bankrupts for debts due to them, and another thing to give efficacy to those institutions to cut out attaching creditors, although posterior in point of time, who have commenced their proceedings under the known laws of the government to which they owe allegiance and from which they are entitled to protection. The right of

such assignees thus to sue in a foreign country does not result from the force or effect of the law, but from long used and well established comity."

The title of a foreign assignee or trustee in insolvency, depending for its recognition here solely on our comity, that comity will not be shown where there is any good reason against it. Here the debt due from Lester to the German Insurance Company, and the right to which in the assignee we are asked to recognize, has been attached by the plaintiff, and all the necessary steps taken under our laws for its appropriation to the indebtedness of the insurance company to the plaintiff. It is of no consequence that the attachment was not made until after the assignment in insolvency, and after notice of the assignment had been given to Lester—for the right of the plaintiff is not the right of a prior attaching creditor, but the right of a creditor asserting his claim against the opposing claim of the assignee in insolvency, the one resting on legal proceedings authorized by our laws, and the other only on a comity which we can exercise or refuse to exercise at our discretion. In these circumstances the court owes a legal duty to the plaintiff which is far more imperative than the demands of mere hospitality to a stranger.

In this case the plaintiff is a citizen of Rhode Island, but that fact does not affect the case. *Upton* v. *Hubbard*, 28 Conn., 275. The citizens of all our sister states have by the constitution of the United States the same privileges with our own citizens, and any one of them who has availed himself of the legal remedies furnished by our laws, to secure payment of a debt due him, has the same claim to the assistance of our courts that one of our own citizens would have.

It does not appear very clearly by the finding whether the assignment was made by the insurance company in the first instance, and as an ordinary assignment for the benefit of creditors, or as a part of certain insolvent proceedings commenced by petition, in the course of which the petitioning creditor is required by the statute to execute an assignment of all his property to certain trustees appointed by his creditors at a meeting called by the insolvent court for that purpose.

It is found only that the assignment was made "under the insolvent laws of the state of Pennsylvania." It was however stated in the argument, and seemed to be agreed, that the assignment was made under the 22d section of the act with regard to "Insolvents," which is a different statute and in a different part of the statute book, from that which regulates assignments for the benefit of creditors. 1 Brightly's Purdon's Digest of Penn. Statutes, pp. 90 and 775. Whatever therefore might be said with regard to a voluntary assignment for the benefit of creditors, the present assignment must be regarded as clearly a statutory and not a common law conveyance, and therefore as having no strictly legal effect beyond the limit of the operation of the laws of the state.

For the reasons which we have given we think the right of the plaintiff must prevail over the claim of the assignee of the insurance company, and advise that judgment be rendered in his favor.

In this opinion the other judges concurred; except PARK, C. J., who dissented.