THE HIBERNIA NATIONAL BANK, Respondent, v. LEOPOLD LACOMBE and others, as Commissioners in Liquidation of THE MECHANICS' AND TRADERS' BANK OF NEW ORLEANS, Appellants, Impleaded, &c.

*A cause of action upon a draft arises in the place where the drawee refuses to pay it—effect in this State of a foreign adjudication of bankruptcy—a creditor may hold property here, as against the foreign assignee—he may do so though he is domiciled in the State appointing the assignee.*

This action was brought upon a draft drawn, on March 17, 1879, upon bankers in New York city, by the Mechanics' and Traders' Bank of New Orleans, to the order of the plaintiff, both the drawer and the payee being

national banks, organized and carrying on business in the city of New Orleans. On March 19, 1879, the Mechanics' and Traders' Bank, having become insolvent, a decree was duly entered in an action brought against it in a court of Louisiana, having jurisdiction thereof, declaring its charter forfeited, and appointing, as commissioners in liquidation, the appellants, to whom the assets of the bank in the State of Louisiana were thereafter delivered.

The draft having been presented for payment and payment refused on March 26, this action was commenced on March 27, by the issue of an attachment against the said bank, and a levy thereunder, upon funds belonging to it, which were then in the hands of the bankers upon whom the draft was drawn, the summons being subsequently served upon it by publication. Thereafter the commissioners in liquidation were, upon their application, made parties defendant herein.

*Held*, that the draft being drawn upon residents of this State, and payment thereof having been here refused by them, the cause of action arose in this State.

That the fact that prior to the commencement of this action the charter of the bank had, by the decree of the court in Louisiana, been forfeited, and its corporate existence thereby terminated, did not affect the right of a creditor of the bank to proceed against it, in this State, as to property situated herein.

That the fact that the plaintiff was domiciled within and subject to the laws of the State of Louisiana, did not prevent it from maintaining this action here.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

This action was brought against the Mechanics' and Traders' Bank of New Orleans upon a bill of exchange for $10,000 dated New Orleans, March 17, 1879, drawn by it upon M. Morgan's Sons, New York, payable to the order of the plaintiff, a national bank, located in New Orleans, at sight, which was presented for payment on the 26th of March, 1879, and payment thereof having been refused, it was, on the said day, duly protested for non-payment, and notice thereof given.

The defendant, the Mechanics' and Traders' Bank, failed on the 19th of March, 1879, and on the same day judgment was entered against it in a court in New Orleans, declaring its charter forfeited, and appointing commissioners in liquidation to wind up its affairs. The sheriff of the parish of Orleans took possession of the assets of the bank in Louisiana, on the 19th of March, and on the 30th of April, 1879, delivered them to the above defendants as commissioners,

The statute of Louisiana bearing upon the question (1 Ray's Revised Statutes of Louisiana, § 284), was as follows, viz.: "Every banking company established under this act shall, on proof of any act of insolvency or non-compliance with any of the conditions of this act, forfeit its corporate rights; and it shall be the duty of the district court of the district in which said corporation is situated, at the instance of any creditor, or of the auditor of public accounts, and on proof of the alleged facts, to decree such forfeiture, and to appoint thereupon commissioners to effect the liquidation of the affairs of the corporation, to convert into cash, as speedily as may be, under the direction of the court, all the assets of the corporation, including the sum that may have remained unpaid by stockholders upon their respective shares of the capital stock; and after providing for any unpaid balance which may be due to the bill-holders, to distribute the same, as now provided by law, in case of insolvencies of individuals."

This action was commenced on the 27th of March, 1879, against the Mechanics' and Traders' Bank, by the issue of an attachment under which its funds, in the hands of M. Morgan's Sons, were levied upon on that day. Service of the summons upon the bank was made by publication. The commissioners in liquidation of the bank were made defendants, upon their own application, July 11, 1879.

*Wm. Henry Arnoux,* for the appellant. The instrument sued on in this action is a Louisiana contract, because it is admitted that such instrument was made and delivered in New Orleans; and the cause of action therefore did not arise within this State. The contracts of makers, acceptors, and indorsers of commercial paper are separate and distinct; and their relations to each other do not affect the law governing their respective obligations. (*Everett* v. *Vendryes,* 19 N. Y., 436 ; and see cases hereinafter cited.) It is the established law in respect to the contract of indorsement that the indorser is held according to the law of the place of indorsement, without regard to the residence of the maker or the place of payment. (*Aymar* v. *Sheldon,* 12 Wend., 439 ; *Cook* v *Litchfield,* 5 Sandf., 330 ; *Dunscomb* v. *Bunker,* 2 Metc., 8 ;

*Lowry's Adm'rs* v. *Bank of Georgia*, 7 Ala., 120; *Dunn* v. *Adams*, 1 Id., 527; *Cox* v. *Adams*, 2 Kelly [Geo.], 158; *Hatcher* v. *Morine*, 4 Devereux, 122; *Dow* v. *Rowell*, 12 N. H., 49; *Yeatman* v. *Cullen*, 5 Blackf., 240; *Holbrook* v. *Vibbard*, 2 Scammon, 465; *Trimley* v. *Vignier*, 1 Bing. N. C., 151; *Slocum* v. *Pomery*, 6 Cranch, 221; Story on Prom. Notes, § 339, and notes; *Dundas* v. *Bowler*, 3 McLean, 397; *Connecticut M. L. A. Co.* v. *C. C. & C. R. R.*, 23 How., 180; *Overton* v. *Bolton*, 9 Heisk. [Tenn.], 762; 24 Am., 367.) Acceptance in New York is a New York contract. (*Norton* v. *Cook*, 9 Conn., 314; *Burrows* v. *Jemino*, 2 Stra., 733; Story on Prom. Notes, § 168; Story on Bills, § 165; *Roquette* v. *Overmann*, L. R., 10 Q. B., 536.) The same is held as to a surety. (*Clapham* v. *Hull*, 51 Miss., 482.) Drawers are simply sureties, and are held according to the law of the place where the bill is drawn; that is, the place where their contract is made. (*Allen* v. *Merch. Bank of N. Y.*, 22 Wend., 215, 240; *Bank of Rochester* v. *Gray*, 2 Hill, 227; *Carroll* v. *Upton*, 2 Sandf., 171; Phillimore's Internat. Law, § 1349, 4 ed., p. 661; *Hicks* v. *Brown*, 12 Johns., 142; *First National Bank of Toledo* v. *Shaw*, 61 N. Y., 283, 293; *Willetts* v. *Waite*, 25 N. Y., 577; *Cantwell* v. *Dubuque W. R. R.*, 17 How., 16; *Artisan's Bank* v. *Park Bank*, 41 Barb., 599; *Western Bank* v. *The City of Columbus*, 7 How., 238; *The Bank of the United States* v. *United States*, 2 How. U. S., 711; *De Wolf* v. *Johnston*, 10 Wheat., 366; 6 Curtis, 438.) And in accord with this see *Cope* v. *Alden*, 53 Barb., 350; *Dolman* v. *Cock*, 1 McCarter, 56; *Champion* v. *Kille*, 1 McCarter, 229; *Andrews* v. *Torrey*, 1 McCarter, 355; *Chase* v. *Dow*, 47 N. H., 405; *In re* Glyn, 15 Nat. Bank. Reg., 495; *Kilgore* v. *Dempsey*, 25 Ohio St., 413; 18 Am., 306; *Depaw* v. *Humphreys*, 10 Martin (La.), 1; *Kuenzi* v. *Elvers*, 14 La. An., 391; *Mix* v. *Madison Ins. Co.*, 11 Ind., 117; *Hunt* v. *Standart*, 15 Ind., 33; *Lennig* v. *Ralston*, 23 Penn. St., 137; *Hazelhust* v. *Kean*, 4 Dall., 20; *Allen* v. *The Bank*, 5 Whar., 425; *Hyatt* v. *Bk. of Kentucky*, 8 Bush, 193; *Price* v. *Page*, 24 Mo., 65; *Cooper* v. *The Earl of Waldegrave*, 2 Beav., 282; *Timbey* v. *Vignier*, 1 Bing., N. C., 151; *Rouquette* v. *Overmann*, L. R., 10 Q. B., 525;

*Snaith* v. *Mingay*, 1 M. & S., 87 ; *Baker* v. *Sternes*, 9 Ex., 684. This is the general principle of all personal contracts, that they are to be governed by the law of the place of contract. (*Ivey* v. *Lalland*, 42 Miss., 444 ; 2 Am., 606 ; *Upton* v. *Hubbard*, 28 Conn., 274, 286 ; *Burns* v. *Provincial Ins. Co.*, 35 Barb., 525 ; succession of Wilder, 22 La. An., 219 ; 2 Am., 721 ; *Lennig* v. *Ralston*, 23 Penn. St., 137, 140 ; Daniels on Negotiable Instruments, § 920.) The defendant bank was a corporation organized under and by virtue of the laws of the State of Louisiana ; and as the money that had been deposited by it with M. Morgan's Sons, on whom the draft in question was drawn, was simply a debt due and owing by them to the said bank, and it being a Louisiana corporation, the money due to it was, in the eye of the law, likewise located in that State ; it had no property within the State of New York, nor within the jurisdiction of this court. Therefore, the attachment granted and the judgment entered in this action were void, there having been no personal or voluntary appearance of said bank. The right of action against foreign corporations exists only by statute, and is limited to property in this State. (*Hulbert* v. *Hope M. I. Co.*, 4 How., 275 ; *Gibbs* v. *Queens Ins. Co.*, 63 N. Y., 114 ; *Brewster* v. *Michigan C. R. R.*, 5 How., 183 ; *Whitehead* v. *Buffalo & L. H. R.*, 18 How. Pr., 218, 232 ; *Case* v. *Ohio Ins. Co.*, 2 C. R., 82 ; *Van Buskirk* v. *The Hartford Fire Ins. Co.*, 14 Conn., 583 ; *Matter of Franklin Bank*, 1 Paige, 249 ; *Chapman* v. *White*, 6 N. Y., 412 ; *Commercial Bk.* v. *Hughes*, 17 Wend., 94 ; *Graves* v. *Dudley*, 20 N. Y., 76 ; *Willitts* v. *Waite*, 25 N. Y., 584 ; *Hoyt* v. *Commissioners of Taxes*, 23 N. Y., 224 ; *Atwood* v. *Protection Ins. Co.*, 14 Conn., 555, 562 ; *Van Buskirk* v. *Hartford Fire Ins. Co.*, 14 Conn., 583 ; *Milne* v. *Moreton*, 6 Binn., 361.) Where a citizen of a State pursues an insolvent fellow-citizen in another State, he may be treated as a trustee and called to account as such in the courts of his own State. (Story Conf. Laws, § 403, etc. ; *Sill* v. *Worswick*, 1 H. Bla., 690 ; *Phillips* v. *Hunter*, 2 Id., 402 ; *Hunter* v. *Potts*, 2 T. R., 182 ; *Exparte Frank*, 1 Cook's B. L., 336 ; *Harris* v. *Mandeville*, 2 Yeates, 99 ; *May* v. *Breed*, 7 Cush., 16 ; *Peck* v. *Hibbard*, 26 Vt., 698 ; *Blake* v. *Williams*, 6 Pick., 312.)

Or, instead of treating him as a trustee, where equity demands it, a court may enjoin its own citizens from commencing, or, having commenced, from prosecuting any litigation in the courts of another State. (*Engel* v. *Scheuerman*, 40 Ga., 206; 2 Am., 573; *Dehon* v. *Foster*, 86 Mass., 545; *Vail* v. *Knapp*, 49 Barb., 299; *Field* v. *Holbrook*, 3 Abb., 377; *Dobson* v. *Pearce*, 12 N. Y., 169; *Mitchell* v. *Bunch*, 2 Paige, 606; *Mead* v. *Merritt*, 2 Paige, 402; *Bushby* v. *Munday*, 5 Mad., 297; *Van Buskirk* v. *Hartford Fire Ins. Co.*, 14 Conn., 583, 588; *Potter* v. *Brown*, 5 East, 131.) Every subject is to be deemed to be a party to the laws of his own government. (*Mather* v. *Bush*, 16 Johns., 233; *Consequa* v. *Fanning*, 3 Johns. Ch., 587; *Touteng* v. *Hubbard*, 3 Bos. & P., 291; *Conway* v. *Gray*, 10 East, 536; 2 Parsons on Cont., 568; *Campbell* v. *Hall*, Cowp., 208, per Lord MANSFIELD; *Keyser* v. *Rice*, 47 Md., 203; 28 Am., 448).

*Thomas S. Moore*, for the respondent.    The cause of action arose in the State of New York. The court had jurisdiction of the action, and the attachment was properly granted. (§ 427, Code of Procedure; Chitty on Bills, p. 144, 11th English ed.; *Cumberland Coal Co.* v. *Hoffman Coal Co.*, 30 Barb., 168; *Burckle* v. *Eckhart*, 3 N. Y., 132; 2 Kent Com. *p. 460, citing *Cooper* v. *Earl of Waldegrave*, 2 Beavan, 282; *Bank of Commerce* v. *Rutland R. R. Co.*, 10 How., 1; *Whitehead and Buffalo* v. *L. H. R. R. Co.*, 18 How. Pr., 233; *Pomeroy* v. *Ainsworth*, 22 Barb., 128; *Conn. Mut. Life Ins. Co.* v. *Cleveland R. R. Co.*, 41 Barb., 9; 23 How. Pr., 180; *Everett* v. *Vendryes*, 19 N. Y., 436; *Spencer* v. *Rogers Locomotive Works*, 8 Bosw., 612.)

The corporation, the Mechanics' and Traders' Bank, was not dissolved as against creditors attaching its property in this State. (1 Ray's Statutes of La., § 284; *In re Independent Ins. Co.*, 1 Holmes, 103, U. S. Circuit Ct., Mass.; *Thornhill* v. *The Bank*, 1 Woods, 1; *Washington Marine Ins. Co.*, 2 Benedict, 292.)

Even though the decree of the District Court of Louisiana dissolved the Mechanics' and Traders' Bank, it could only do so as regards its property in Louisiana; as to property in the State of New York, it could take effect only subject to the claims of cred-

itors.    The property in this State is a fund for the benefit of those creditors who invoke the protection of its laws ; and it will be held by our courts to satisfy their claims, notwithstanding any judicial proceedings in other States. (*Hamilton* v. *Accessory Transit Co.*, 26 Barb., 46; *Tinkham* v. *Vanderbilt*, 39 Barb., 140; *City Ins. Co.* v. *Comm. Bank*, 68 Ill., 348; *Murray* v. *Vanderbilt*, 39 Barb., 140; *Holmes* v. *Remsen*, 24 Johns. R., 229; *Abrahams* v. *Plestoro*, 3 Wend., 548; *Hoyt* v. *Thompson*, 5 N. Y., 341; *Hoyt* v. *Thompson, Ex.*, 19 N. Y., 224; *Willitts* v. *Waite*, 25 N. Y., 577; *Kelly* v. *Crapo*, 45 N. Y., 86.)

BARRETT, J.:

The main question in this case is whether a Louisiana creditor of the defendant bank, who has attached property here, takes precedence over liquidators appointed by a Louisiana court, under an act of that State, which is in the nature of a bankrupt or insolvent law.

1. It is incidentally argued that the present proceedings were absolutely void because of the forfeiture decreed by the Louisiana court.    The contention is that thereby the bank had ceased to exist, and consequently could no more be sued than a natural person deceased.    This is but another way of saying that the liquidators take precedence.    Whatever rights they have flow from the judicial proceedings against the bank.    They claim the property thereunder. Now it is evident that if, on general principles, well settled in our courts, the liquidators' title, thus acquired, cannot prevail against the rights of attaching creditors, this legal *status* cannot be affected by either the form or substance of the foreign tribunal's judgment. No act of the foreign jurisdiction, no special provision of the foreign decree, can be permitted to prevent the free exercise of rights conferred by our laws.    The corporation lives and exists, therefore, at least, so far as to enable creditors to proceed against property here, *quasi in rem*. (*City Ins. Co.* v. *Commercial Bank*, 68 Ill., 348.) In this case the court said : " If it be conceded that it is proven *this bank has forfeited its franchises under the laws of Rhode Island*, the obligation of its contracts survives, and this action may be maintained on the ground that it is a *proceeding against the*

*property of the bank* (not in the hands of a *bona fide* purchaser), *to enforce payment.*"

To subject the property of the bank within the State to the payment of their claims, is a right of which creditors cannot be deprived, either directly, by conveyance *in invitum* under a foreign bankrupt law, nor indirectly, by a decree, which in effect is nothing more nor less, so far as we are concerned, than a declaration of the foreign court *that the debtor cannot be sued.* Nor can the liquidators be heard to set up this defense. The only effect it could have, if successful, would be to defeat the creditor, and enable the liquidators to reduce the property to possession—the very thing which our law will not suffer. The law of Louisiana, under which the liquidators claim, has no extra-territorial force. On this head the principle of comity has been repeatedly but unsuccessfully invoked. The right of the liquidators to appear in our courts, and litigate, is not a strictly legal one, but depends upon the comity. Such comity should not be extended so far as to permit them to set up the provisions of a decree which could possibly have the effect contended for.

But further, we do not think that there was an absolute dissolution, analogous, in legal contemplation, to the death of a natural person. The act under which the decree proceeded provided for a forfeiture "of corporate rights" upon proof of insolvency, but, as was said in *In re Independent Insurance Company* (1 Holmes, 103, U. S. Circuit Ct., Mass.), "A corporation may, for certain purposes, be considered dissolved so far as to be incapable of doing injury to the public, while it yet retains vitality so far as essential for the protection of the rights of others." Under the decree in question the bank was put in liquidation. Its assets were placed in the hands of the liquidators. The power to carry on business was taken away. Undoubtedly, it ceased to be, so to speak, a *going* corporation; nay, more, as its corporate rights were forfeited, perhaps it could not be sued with a view to an ordinary judgment *in personam.* But it could be impleaded in many ways : *e. g.*, by parties having liens to be foreclosed or other rights to be secured, not demanding a personal judgment to be collected by execution against its general assets. So also, where the proceeding is in substance, though not in form, against *the thing* sought specially to be subjected.

2. The next subdivision of the main point urged by the appellant is, that the court below had no jurisdiction, for the reason that both plaintiff and defendant are foreign corporations, and that the cause of action did not arise within this State. It is true, that the plaintiff and defendant are foreign corporations, but the appellant is in error in supposing that the cause of action did not arise within this State. The action is founded upon a bill of exchange, drawn by the defendant bank, in New Orleans, on Messrs. M. Morgan's Sons, in this city. The drawer's contract was that Morgan's Sons should pay the bill here upon demand. That contract was broken upon the refusal of Morgan's Sons to so pay. The cause of action was this breach. The question is not what law shall govern in the enforcement of the · contract, but where the breach occurred. Clearly that was here. The cause of action was complete upon presentment, refusal, protest and notice—all acts occurring here. The authorities, with the single exception of the Special Term case of *Cantwell* v. *Dubuque Western R. R. Co.* (17 How. Pr., 16), fully support this position. (*Bank of Commerce* v. *Rutland R. R. Co.*, 10 How. Pr., 1; *Conn. Mutual Life Ins. Co.* v. *Cleveland R. R. Co.*, 23 How. Pr., 180, followed, 41 Barb., 9; *Spencer* v. *Rogers Locomotive Works*, 8 Bosw., 612; *Burckle* v. *Eckhart*, 3 N. Y., 132; *Johnson* v. *Adams Tobacco Co.*, 14 Hun, 89.) The *Cantwell Case* is overshadowed by the authorities cited. Besides, it was evidently decided under a misapprehension of the ruling in *Western Bank* v. *City of Columbus* (7 How. Pr., 238). The latter case was well decided upon the actual facts, for the action was on a loan made and payable in the foreign State. The bill of exchange was merely collateral, and the defendant corporation was not a party to it.

3. The appellant next invokes the comity in favor of the liquidators, *especially as against this plaintiff*, on the ground that the latter is a Louisiana creditor, and should not in this manner be permitted to obtain a preference which would not be allowed in the home *forum*. This in our judgment is the gravest question arising on this appeal. If it were original we would certainly hesitate before rejecting the appellant's claim. The departure in this country from the English rule, with respect to the universal operation, upon

all personal property, of an assignment under a foreign bankrupt law, was mainly attributable to considerations affecting domestic creditors.    Our own attaching creditors were to be preferred to any foreign assignees.    So our local laws were to be defended and sustained as against those of any foreign State.    From this it resulted that a foreign assignment, void under our laws, would not be here enforced.    It was maintained that every country may, by positive law, regulate as it pleases the disposition of personal property found within it (Story Conf. of Laws, § 410); that a statutory conveyance, made under the authority of any legislature, can operate intra-territorially only, (§§ 411, 414), and that national comity, which is all that a foreign assignee can invoke, requires us to give effect to such assignments only so far as may be done without impairing the remedies or lessening the securities which our laws have provided for our own citizens.    It is apparent that the reason of the rule does not include foreign creditors, domiciled in the State wherein the assignment originated, and subject to its laws.    There would appear to be no good reason why the comity should be withheld from the foreign assignee, in favor of such foreign creditor.    In England, a British creditor, who thus seeks to defeat the operation of the law of equality, is treated as a trustee, and in an action by the assignee may be compelled to refund what he secured by attachment in foreign parts, or, he may be restrained by injunction from proceeding against the estate of the insolvent in the foreign jurisdiction.

But the weight of authority in this country is against even this limited application of the doctrine of national comity.    To sustain and fortify the position taken for the protection of domestic creditors, the courts have substantially shut out the foreign assignment altogether.    Chief Justice MARSHALL, in *Harrison* v. *Sterry* (5 Cranch, 289, 302), declared that the bankrupt law of a foreign country *is incapable of operating a legal transfer of property in the United States.*    It has even been doubted whether the assignee can sue here at all; but the better opinion would seem to be that he may.    Not, however, as an assignee having an interest, but as the representative of the bankrupt.    (*Holmes* v. *Remsen,* 20 Johns., 259; *Hoyt* v. *Thompson,* 1 Seld., 351, Opinion of PAIGE, J.; *Willitts* v. *Waite,* 25 N. Y., 584, Opinion of ALLEN, J.)

In *Abraham* v. *Plestoro* (3 Wend., 548) it was held that the
assignee was not entitled to an injunction to restrain *even the
bankrupt* from receiving property which was on the high seas, on
its way from England to New York, at the time of suing out the
commission of bankruptcy.   In *Johnson* v. *Hunt* (23 Wend., 91)
*Abraham* v. *Plestoro* was commented upon and followed, the court
giving its view of what was decided in that case in the following
language : " The amount of the decision, as I understand it, is that
an assignment *in invitum*, under the law of one State or nation, has
no operation in another, *even with respect to its own citizens.*   That
the bankrupt, a subject of the very country under whose laws he
was proceeded against, may, on crossing the territorial line, dis-
pose of the property which he has brought with him ; may withhold
it entirely from the creditors who are proceeding against him in the
foreign jurisdiction ; and it follows *that other creditors, coming
from the same jurisdiction, may either pursue him by attachment,*
by judgment and execution, or take a voluntary transfer of the
property so brought by the debtor in satisfaction of claims."

Both of these cases were considered in *Hoyt* v. *Thompson, ubi
supra.*   RUGGLES, Ch. J., took a different view of *Abraham* v. *Ples-
toro,* and dissented from *Johnson* v. *Hunt,* but PAIGE, J., declared
that the effect of these decisions was to establish " the absolute inva-
lidity of the foreign statutory assignment, as it respects property in
this State ; not only as between the foreign assignees and domestic
creditors, but also *as between such assignees and creditors residing
in the country under whose laws the assignment was made, and who
are proceeding against the property by attachment or otherwise in
our courts.*"   To like effect is *Willetts* v. *Waite* (*supra*), where
SUTHERLAND, J., said : " I understand that in this case the court
held that such title will not be recognized by the courts of this
State, even where the question arises entirely between the bankrupt
*and his assignee and creditors all residing in the country under
whose laws the assignment was made.*"

The tendency of the cases in the Supreme Court of the United
States, and in the other States of the Union, is in the same direction.
(*Ogden* v. *Saunders,* 12 Wheat., 218; *Booth* v. *Clark,* 17 How.
U. S., 322; *Zipcey* v. *Thompson,* 1 Gray, 243 ; *Birch* v. *McLean,*

1 Harris & McH., 286 ; *Wallace* v. *Patterson*, 2 Id., 463 ; *Blake* v. *Williams*, 6 Pick., 303 ; *McNeil* v. *Colquhoon*, 2 Hayw., 24 ; *Lanfear* v. *Sumner*, 17 Mass., 110 ; *Payne* v. *Lester*, 44 Conn., 204 ; *Upton* v. *Hubbard*, 28 Conn., 274 ; *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 351 ; *Betton* v. *Valentine*, 1 Curtis, 168.)

In *Booth* v. *Clark*, the doctrine laid down by Chief Justice MARSHALL in *Harrison* v. *Sterry*, was reasserted ; and, speaking of a receiver appointed by the Court of Chancery in this State, the court remarked : " He has no extra-territorial power of official action, none which the court appointing him can confer with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property."

*Upton* v. *Hubbard* was a contest in Connecticut between a Massachusetts assignee and a creditor who was also from that State. The court held that although a foreign assignee may in some cases be allowed to sue in our courts as a matter of courtesy, yet the courtesy will be denied in all cases where there are claims upon the property adverse to the assignment, *whether the claimants be citizens of our own or of some other State.*

In *City Ins. Co.* v. *Commercial Bank*, both the attaching creditor and the debtor were corporations created by the laws of Rhode Island. The attachment was sustained.

In *Payne* v. *Lester*, the court alluded to the fact that the plaintiff was a citizen of Rhode Island, but remarked that that did not affect the case. "The citizens of *all our sister States*," said GRANGER, J., "have by the Constitution of the United States the same privileges with our own citizens, and any one of them who has availed himself of the legal remedies furnished by our laws to secure payment of a debt due him, has the same claim to the assistance of our courts that one of our own citizens would have."

We feel constrained by this strong current of authority to hold that the Louisiana creditor has a right, as against the liquidators, to take advantage of our laws and to proceed thereunder ; that the liquidators are not vested, as assignees having an interest, with the property within our jurisdiction ; and that, treating them, as we must, merely as representing the bankrupt, they have no *status* to dissolve the attachment or to oust the plaintiff.

4: Some minor points were made which need not be considered at length.

It is said, for instance, that there was nothing to attach but a debt; and that, as such debt was due by Morgan's Sons to the defendant bank in New Orleans, the moneys were in the eye of the law located in Louisiana; *ergo*, the defendant had no property in this State. There is nothing in this point. The books are full of just such cases. The Code expressly provides for the attachment of debts. But without pursuing this further, we need only say that the findings below, made upon consent, show that at the commencement of this action, there were "*funds*" in the hands of Morgan's Sons "belonging to the bank," and that the attachment was levied upon such "funds." There is nothing here about a debt; on the contrary, the relation of bailor and bailee may be presumed. *The funds* are within this State.

Upon the whole we are of the opinion that the judgment must be affirmed with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed with costs.