10  393<br>
14  691

</div>

[No. 1352. Decided December 27, 1894.]

E. C. NEUFELDER, *Assignee, Appellant, v.* NORTH BRITISH AND MERCANTILE INSURANCE COMPANY, *Respondent.*

ASSIGNMENT FOR BENEFIT OF CREDITORS—EFFECT UPON ATTACHMENT IN FOREIGN STATE—FILING CLAIM WITH ASSIGNEE.

Although by the law of this state an assignment for the benefit of creditors would operate to dissolve a prior attachment, yet, in case of the levy of attachment in a foreign state upon the property of a citizen of this state, the levy, if valid where made, would not be affected by the subsequent assignment of the debtor here.

The filing by a creditor of his claim with the assignee of an insolvent estate is not an abandonment of any rights he may have under a prior attachment levied in a foreign state; but such creditor becomes thereby a party to the insolvency proceedings and will be bound by them.

Where an attaching creditor in a foreign jurisdiction also files his claim with the assignee of his debtor, the amount received by means of the attachment ought to be deducted from the claim as filed with

---

NOTE—As to the conflict between attachments or other legal proceedings in one state and general assignments or insolvency proceedings in another state, see note to *Long v. Forrest,* (Pa.) 23 L. R. A. 33.

the assignee, and the balance treated as the true amount of indebtedness.

*Appeal from Superior Court, King County.*

*Strudwick & Peters*, for appellant.

*Stratton, Lewis & Gilman*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—The respondent is a corporation organized and existing under and by virtue of the laws of the Kingdom of Great Britain and Ireland, and, at the times hereinafter mentioned, was lawfully conducting the business of insurance in this state, and was represented by a local agent in the city of Seattle. It was also engaged in similar business in California and in all the other states and territories on the Pacific Coast, and had a general agent for the management thereof in all of said states and territories, including this state, whose office and place of business was at San Francisco, in the state of California. All moneys collected by local agents were remitted to this general agent, and the funds of the company for the payment of losses were kept in San Francisco and disbursed by him only, the local agents throughout said states and territories having no authority to settle or pay losses on account of the company, except as requested and directed by him.

On July 2, 1890, the respondent, by its agent at Seattle, delivered a properly executed policy of insurance to one C. H. Knox, a citizen of this state, whereby it agreed to insure him against loss or damage by fire, to the amount of $1,000, on a stock of merchandise owned by him in Seattle, for the period of one year from said date. On September 19, 1890, and while the policy was in full force and effect, the property so insured was totally destroyed by fire. Thereafter the respondent adjusted the loss at $1,000, but before the same was paid, and on October 1, 1890, certain creditors of Knox, residing in San Francisco, commenced actions in the superior court of the city and county of San Francisco to recover the

amount of their respective claims, and on the following day caused the amount due from respondent to Knox on the policy of insurance to be attached by process of garnishment, in the manner prescribed by the laws of California. Subsequently, and on October 25, 1890, the said Knox made a general assignment to appellant, in this state, for the benefit of his creditors. After having qualified according to law, as assignee, the appellant brought this action in the superior court of King county to recover from the respondent the sum due on the policy issued to his assignor, Knox. The respondent admitted its liability on the policy upon which the action was brought, and disclaimed any desire to evade payment, but asked the trial court to stay this proceeding until its liability in the attachment suits in California should be determined. The cause was tried by the court without a jury, and upon the facts found and conclusions of law based thereon by the court, a judgment was entered staying further proceedings in accordance with the prayer of the defendant.

It is disclosed by the record that other insurance companies besides the respondent, indebted to Knox on policies of insurance covering the burned stock of goods, were likewise garnished in the attachment proceedings in the California court. The total amount of indebtedness so attached, including the amount due from the respondent, was $4,500. The total amount of the claims of the California creditors, upon which suits were brought and in which garnishments were served upon respondent, was $5,078.15. Two of the creditors who caused garnishment process to be served upon the respondent in California, namely, Wheaton, Luhrs & Co., and Esberg, Bachman & Co., afterwards filed their claims in this state with the appellant as assignee of Knox.

From what we have stated it will be observed that the facts in this case are almost identical with those involved in the case of *Neufelder v. German-American Ins. Co.*, 6 Wash. 336 (33 Pac. 870, 36 Am. St. Rep. 166). In that case this court held that the California court acquired jurisdiction of the debt owing by the insurance company to Knox, and, having acquired jurisdiction, could enforce its payment by

the garnishee. The appellant does not seek to have us reconsider our ruling in that case, but contends that this appeal presents for decision points not raised in the former case.

The first and most material point made is that the trial court in rendering its judgment overlooked one of the provisions of our insolvent law, to the injury of the appellant, or rather of the creditors in this state. The claim, more specifically stated, is that inasmuch as, by virtue of our insolvent debtors act, then in force, prior attachments were dissolved, in this state, by a general assignment, the court should have held the law operative to the same extent upon the California attachments, and permitted the action to proceed without any regard whatever to the proceedings in that state. The appellant's contention is based upon the general proposition, that the laws of a state have no binding force beyond its territorial limits, and are only permitted to operate in other states upon the principle of comity, and when neither the state where the foreign law is sought to be applied, nor its citizens, would be injured by its application. We have no disposition to dispute this proposition, for it may be said to be the statement of an elementary principle of law. Sutherland, Stat. Const., 12; *Dunlap v. Rogers*, 47 N. H. 287 (93 Am. Dec. 433).

But, while it is true that if writs of attachment had been levied upon the property of Knox at the suit of creditors, in this state, they would have been dissolved by his assignment by operation of law, it does not necessarily follow that the court erred in recognizing the California attachments as valid and binding there. It is said by the learned author above cited (page 12), that the observance and recognition of foreign laws rests in comity and convenience, and in the aim of the law to adapt its remedies to the great ends of justice. And courts, in furtherance of justice, do recognize the validity of acts done under foreign laws, which would not be valid if done in the jurisdiction of the forum, as will be hereafter shown.

The learned counsel for the appellant cite the case of

*Upton v. Hubbard*, 28 Conn. 274 (73 Am. Dec. 670), in support of their contention. It was there decided that if a debt due from a person domiciled in Connecticut to a person domiciled in Massachusetts, is attached in Connecticut by a creditor of the payee, and the payee, between the levying of the attachment and the judgment entered thereon, makes an assignment, this assignment will not pass the debt as against the attachment creditor, even though by the laws of Massachusetts such an assignment operates to dissolve prior attachments. And from this the conclusion is deduced by appellant that, in no event, will a court of one state give effect to the laws of another state, which are not in harmony with its own. But, suppose the assignment in Massachusetts had been made, in that case, prior to the levying of the attachment in Connecticut, what would then have been the decision of the court? It appears that this question has been answered by the same court, in accordance with the view hereinbefore indicated, in the later case of *Clark v. Connecticut Peat Co.*, 35 Conn. 303. In that case a debt due from a citizen of Connecticut to citizens of Massachusetts was attached by a citizen of the former state to whom the Massachusetts creditors were indebted. Before the attachment, the debt had been assigned, in good faith, by the Massachusetts creditors to a citizen of Massachusetts. It seems that the assignment would not have been valid under the law of Connecticut, for want of notice; yet the court held that, being good in Massachusetts, where made, it was good in Connecticut, and passed the debt attached to the assignee. It can hardly be said that the court disregarded or overlooked the laws of Connecticut by giving effect to the assignment in Massachusetts. It simply decided, in effect, that after a valid transfer of the debt had been there made, it was not subject to attachment in Connecticut.

So, in this case, the trial court merely held that the debt sued upon, having been lawfully attached and held for the satisfaction of any judgments the California creditors might recover against Knox, prior to the assignment, passed to the appellant, as assignee, subject to those attachments. Nor

was the effect of this ruling, as suggested by counsel, tantamount to enforcing a lien claim under a foreign law, which would be ineffectual under the provisions of our own statute. The court simply took into consideration the status of the debt, at the time of the assignment, and thereby gave "full faith and credit" to the judicial proceedings of a sister state.

That the conclusion of the court below was not improper will also, we think, be disclosed by an examination of the decision of the supreme court of the United States in the well considered case of *Green v. Van Buskirk*, 7 Wall. 148, wherein the court said:

"Attachment laws, to use the words of Chancellor Kent, are legal modes of acquiring title to property by operation of law. They exist in every state for the furtherance of justice, with more or less of liberality to creditors. And if the title acquired under the attachment laws of a state, and which is valid there, is not to be held valid in every other state, it were better that these laws were abolished, for they would prove to be but a snare and a delusion to the creditors."

If the title to property acquired by attachment in one state, and which is valid there, is to be deemed valid in every other state, it would seem logically to follow that an attachment, valid in the state where it is levied, ought to be held valid in every other state. Nor, as we understand it, does the case of *Cole v. Cunningham*, 133 U. S. 107 (10 Sup. Ct. 269), cited by appellant, overrule or modify the court's former decision in the 7th of Wallace, above cited.

Under the circumstances, therefore, we are unable to perceive wherein the appellant was injured by the judgment complained of. If the respondent is compelled to pay the sum of money here claimed, or any part of it, to the creditors in San Francisco, of course it ought not to be obliged to pay it again to appellant. But if it is not compelled to pay there, then the final judgment of the court in this state will be in favor of the appellant for the amount due upon the policy.

It is further claimed by the appellant that Wheaton, Luhrs & Co., and Esberg, Bachman & Co., by filing their

claims with the appellant as assignee, abandoned any rights they might otherwise have had under the attachments. But we do not think the position is strictly tenable. A creditor may prosecute two actions against his debtor for the same cause in different jurisdictions (*Stanton v. Embrey*, 93 U. S. 548; Bliss, Code Pleading, 410); and therefore the waging of one action cannot be said to be a waiver or an abandonment of another. But those creditors, by filing their claims with the assignee, became parties to the insolvency proceedings and will be bound by them. Should the insolvent assignor be discharged from his debts, they cannot thereafter maintain an action against him for the recovery of the debt proved by them, and their claims will be paid pro rata with those of domestic creditors, if any payments are here made. But the amount, if any, which may be received by them by means of the attachments in California, ought to be deducted from the claims as filed with the assignee, and the balance treated as the true amount of indebtedness. *Fay v. Jenks*, 78 Mich. 304 (44 N. W. 378).

We perceive no error prejudicial to appellant, and the judgment is therefore affirmed.

DUNBAR, C. J., and SCOTT and STILES, JJ., concur.

HOYT, J. (*dissenting*).—The ruling upon what I deem to be the most important question in this case is founded upon the decision in the case of *Neufelder v. German American Ins. Co.*, 6 Wash. 336 (33 Pac. 870, 36 Am. St. Rep. 166). I dissented from the opinion of the majority of the court in that case, but gave no reasons for such dissent. I therefore think it necessary at this time to say a word in regard to the question therein decided.

The ruling therein announced is one which will lead to much inconvenience and be productive of great hardship to the residents of this state who hold policies in any of the larger insurance companies and sustain a loss which makes the company liable thereon. Under the rule therein announced, the one entitled to enforce the liability flowing from the loss may be sued in any of the states of the Union

where the company which issued the policy is doing business, and as the larger companies are doing business in all of them, he might be called upon to respond to actions brought against him in all of such states, all of which might be prosecuted at the same time. The result would be that any one having the semblance of a claim will be tempted to bring suit thereon in some state remote from the residence of the defendant, hoping that the difficulty of making a defense will lead to some compromise, or that from want of pecuniary ability, or other reason, defense will be impossible. It will often result that the entire amount of the policy will be absorbed in the payment of unjust claims or frittered away in paying the expenses incident to making a defense against them.

Besides, the inconvenience to the companies doing the business will be very great under such rule. They, of course, are not entitled to the same consideration as is the insured, for the reason that they generally have attorneys in each of the states where they transact business, and are of sufficient pecuniary ability to look after their own interests, but the result to them, taken in connection with the great injustice to the insured which will be wrought, so well establishes the fact that the rule announced is against public policy that I am unable to yield assent thereto. Such a construction as to the status of insurance companies doing business in the several states is to my mind unnecessary. When we take into consideration the fact that the almost universal weight of authority is to the effect that a corporation has its domicil only in the state under the laws of which it is organized, it seems to me it is illogical, and should not be sustained, even although no injustice would be wrought thereby, and that in view of its possible or probable results some other construction is imperative.

A simple solution of the whole question would be to hold that a corporation has only one domicil for the purposes incident to its organization ; that rights and liabilities in general must be procured by or enforced against it in the state where it has such domicil, that is, in the state under the

laws of which it has been incorporated ; that it has a special and limited domicil, in each of the other states in which under the laws thereof it may be allowed to do business ; that its domicil in those states is only for the purposes of the business transacted therein.   The result would be that as to all of the business transacted in a state, and rights and obligations flowing therefrom, the courts of that state would have full jurisdiction of the corporation, but would have no jurisdiction whatever over it in relation to business not transacted in the state.   This seems to me to logically result from the holding as to the domicil of corporations announced by the supreme court of the United States, and under this rule the hardship and injustice which will result from the other will be avoided, yet the object of every state in the enactment of laws providing for jurisdiction over such corporations will be fully subserved.   The only object of such legislation is to protect the inhabitants of the state in their dealings with such corporations, and under the construction above suggested this object would be as fully accomplished by giving the courts of the state such limited jurisdiction as by holding that they had jurisdiction as to every class of business transacted by the corporation in or out of the state.

I believe the true rule to be that such corporations are within the jurisdiction of the courts of the state wherein they were incorporated for all purposes, and of the courts of the other states in which they do business only so far as necessary to protect the inhabitants thereof in relation to such business.   Under this rule the courts of the state of California had no jurisdiction of the defendant corporation in the case at bar.   Hence the liability of the company could be enforced here regardless of the proceedings in the courts of that state.   It might follow that the company would have two judgments rendered against it for the same liability, but its remedy would be an appeal to the supreme court of the United States from one or both of them.   There this question would be finally determined, and when so determined would be binding upon the courts of all the states.

26-10W

I think the decision in the case cited was wrong, and that the one announced in this is also wrong.