| 48 | 401 |
| 61 | 156 |
| 48 | 401 |
| 69 | 717 |

## WATTS COOKE, RECEIVER, *vs.* THE TOWN OF ORANGE.

*C* was appointed in the state of New Jersey receiver of an insolvent corporation located there, which had on hand at the time a contract with two towns of this state to construct a bridge that connected them. He obtained authority from the insolvent court in New Jersey to go on and perform the contract for the benefit of the creditors, and agreed with the committees of the towns to do so. In building the bridge he purchased the materials and paid for the work with the funds of the corporation which he held as receiver. After the bridge was completed, a Connecticut creditor of the corporation factorized one of the towns as the debtor of the corporation for a balance due for the construction of the bridge. The town was found indebted, and paid over the money to the officer on demand made upon the execution. The receiver, who was not a party to the suit, but had notice of it served upon him, gave no notice to the town not to pay, and if such notice had been given it would not have paid. In a suit brought by *W* as receiver against the town to recover the balance due on the contract which had thus been taken by the factorizing creditor of the corporation, it was held—

1. That *C* could sue in this state as receiver.

2. That the materials having been procured and the work done by him as receiver, the contract price was payable to him.

3. That it made no difference that the bridge was built under the original contract with the insolvent corporation, and that no new contract was made, there having been an agreement with the committees of the towns with him that he should go on as receiver and perform the contract.

4. That the town was not discharged by the payment of the money as garnishee to the factorizing creditor, under the statute that makes such payment a discharge of the claim of the party to whom it had been due, since the corporation which was the defendant in the factorizing suit and as whose debtor the town was factorized, was not the party to whom the money was due.

5. That the receiver was not estopped from claiming the money from the town

by reason of his neglect to notify the town not to pay over the money to the factorizing creditor.

ASSUMPSIT for money due for the building of a bridge by the plaintiff as receiver of The Watson Manufacturing Company; brought to the Court of Common Pleas in New Haven County. The defendants pleaded in abatement that the suit could not be maintained by the plaintiff, inasmuch as the Watson Manufacturing Company was a corporation located in the state of New Jersey, and the plaintiff's authority as receiver of the company was derived wholly from an appointment made by the courts of that state. To this plea the plaintiff demurred, and the court held it insufficient. The defendants then filed a general denial, with notice of the facts that will appear in the finding of the court. The issue was closed to the court and the following facts were found and the finding made a part of the record in the case.

On the 29th of May, 1876, the Watson Manufacturing Company, a corporation of the state of New Jersey and located in that state, entered into a contract in writing, under seal, with the towns of New Haven and Orange in this state, for the erection of an iron bridge over West River, which separated the two towns. About the middle of June, 1876, and before any thing had been done upon the contract, the company became insolvent, and the plaintiff, Watts Cooke, was by the proper court of New Jersey duly appointed receiver of the company. Shortly after his appointment, upon a petition of the legal number of creditors, Cooke, as receiver, was authorized to go on and complete such contracts as the company had on hand, where he should think it would be for the benefit of the estate, and he notified the towns of New Haven and Orange that the company had become insolvent, and that he would go on and complete the contract as receiver.

Immediately after sending this notice he ordered the iron in Paterson in New Jersey, and had it there made into the bridge, paying therefor partly from funds in his hands belonging to the company, and partly from money advanced by him from private funds, for which he afterwards repaid

himself by funds of the estate coming into his hands.   When the bridge was completed it was shipped to New Haven, marked "Watts Cooke, Receiver."   Upon its arrival it was attached by the Blake Crusher Company, a creditor of the Watson Manufacturing Company, the Crusher Company claiming the iron to be the property of the Watson Manufacturing Company.

The iron was immediately receipted for by the plaintiff, and he immediately proceeded to put up the bridge, and it was completed by him in all respects according to the contract and to the acceptance of the towns.

Upon the execution of the contract between the towns and the Watson Manufacturing Company, Samuel Johnson, first selectman of New Haven, and Benjamin F. Clarke, first selectman of Orange, were appointed by the two towns a building committee, and Johnson and Clarke managed the whole business for the towns.

After commencing work upon the contract, and while the iron was being manufactured, the plaintiff was in New Haven, and saw Johnson, and explained to him that he need have no fear about the contract, and that it would be fully completed by him as receiver, which information was communicated to Clarke by Johnson.

At the time of the attachment and the receipt the plaintiff was again in New Haven, and again saw Johnson.   All the circumstances relating to the contract and the performance of it by the plaintiff as receiver were again gone over between them, and Johnson was again informed as to all the facts concerning the ownership of the iron and the insolvency of the Watson Manufacturing Company, all which facts were communicated by Johnson to Clarke.

While the iron was being manufactured at Paterson considerable correspondence passed between Johnson, acting for the two towns, and the receiver.   All letters on Johnson's part were addressed to "The Watson Manufacturing Company," and all letters in reply were signed "Watts Cooke, Receiver," or "Watts Cooke, Receiver for Watson Manufacturing Company."

Neither Johnson nor Clarke ever proposed to relinquish their contract with the Watson Manufacturing Company, or release the bondsmen thereon, but they were willing and consented to have the receiver go on and finish the same, if he chose so to do, and understood that the contract was being performed by the receiver for the benefit of the creditors.

Upon the completion of the contract by the receiver, he came to New Haven and saw the selectmen of the town, and received the amount due upon the contract from New Haven, less five per cent. to be detained according to the contract. He thereupon proceeded to Orange, and there on November 15th, 1876, had an interview with its selectmen. The whole matter was then talked up. Every fact connected with the matter was explained to the selectmen, and they thereupon paid the plaintiff the sum of $2,812.60 upon the contract, being the whole amount due from Orange, less five per cent. to be detained according to the contract. The money was paid by an order upon the treasurer of the town, which order was drawn up by Clarke, first selectman, and was afterwards paid.

On the 6th day of August, 1877, when the retained balance became due, the Blake Crusher Company, as a creditor of the Watson Manufacturing Company, brought their action of debt on judgment to the Court of Common Pleas in New Haven County, at its September term, 1877, and caused this balance to be attached in the hands of the towns, by a factorizing process, as due to the Watson Manufacturing Company. The officer serving the process served a copy of it on said 6th day of August, on Samuel L. Bronson, then and ever since the attorney in this state of the plaintiff as such receiver, and also made demand on the towns to disclose, and both disclosed. The suit was continued until December 18th, 1877, when judgment was rendered by default against the Watson Manufacturing Company for $419.75. The garnishees were found indebted in $148 each, and execution was issued after bond duly filed. The officer having the execution made demand on the town of Orange, and the town thereupon paid over the sum of $148 to the officer, to be

applied on the execution. No notice was given by the plaintiff or his attorney to the town of Orange not to pay the money, and if it had been given the town would not have so paid. The officer thereupon made demand of the town of New Haven, but it refused to pay. The receiver has already paid a dividend of twenty per cent. and probably will pay five per cent. more to the creditors of the company who have proved their claims. The Blake Crusher Company not having presented or proved their claim against the estate, have received nothing. The profits realized by the receiver from the building of the bridge would have been from $700 to $800, had it not been for the expenses of litigation, caused by the three suits brought by the Blake Crusher Company.

The defendant on the trial claimed as matters of law—1st. That the plaintiff, as a foreign receiver, could not maintain this action.—2d. That the contract being with the Watson Manufacturing Company, and not with the receiver, the amount factorized was due to the company.—3d. That whatever was done under the contract by the receiver, was in legal effect done by him, not as an individual, but as agent or representative of the company.—4th. That by express provision of the contract the money was payable to the company, and was therefore liable to attachment by its creditors in this state.—5th. That the plaintiff was estopped to bring this suit to recover the money from the town of Orange, having permitted it to be paid over by the town on the execution to a creditor of the company without objection.—6th. That the town having paid the money over on execution, was protected by statute from farther liability for the debt.

The court (*Stoddard, J.,*) ruled adversely to all these claims and rendered judgment for the plaintiff as receiver to recover the full amount claimed.

The defendants brought the record before this court by a motion in error.

*H. T. Blake,* for the plaintiff in error.

1. A foreign receiver cannot maintain a suit out of his jurisdiction. *Booth* v. *Clark,* 17 How., 322; *Hope Life Ins.*

*Co.* v. *Taylor*, 2 Rob., N. Y., 278; *Farmers & Mech. Ins. Co.* v. *Needles*, 52 Misso., 17; Story Confl. Laws, § 514 *a*. This doctrine has been fully recognized in this state. *Riley* v. *Riley*, 3 Day, 74; *Upton* v. *Hubbard*, 28 Conn., 285; *Hedenberg* v. *Hedenberg*, 46 id., 37. The principle of these cases goes to the *character in which the plaintiff sues*, and applies equally, whether the cause of action arose before or after his appointment. *Hobart* v. *Conn. Turnpike Co.*, 15 Conn., 145; High on Receivers, § 158, note 2. No injustice is done by the rule. Receivers are representatives of *parties in existence*, and can sue in the name of the parties they represent, in which case any proper offsets or defenses can be made. Or they can qualify within the jurisdiction where the fund is that they seek for and then bring their suits. *Hunt* v. *Columbian Ins. Co.*, 55 Maine, 296; *Coope* v. *Bowles*, 42 Barb., 87. When our courts have relaxed this strict rule they have done so with great caution, and only when no injustice would be done and no detriment to our own citizens. But here the money sought has already been paid by the defendants under process of law to creditors of the insolvent company, whose claims have been established by repeated judgments in our own courts, in suits in which the plaintiff was more or less directly a party. It further appears that if the plaintiff recovers the money, he does not intend to pay any thing to these judgment creditors, upon the ground that they have not proved their claims in New Jersey. The receiver invokes the comity of our courts to aid him in showing contempt of their judgments, and doing injustice to our citizens. If, as the court says in *Booth* v. *Clark*, supra, our courts will not permit a foreign receiver to sue, on account of his inability to give security for the faithful administration of the fund which he seeks to take out of the jurisdiction, much less should they entertain his suit when he gives them express notice that he does *not intend* so to administer it. Moreover the suit should have been brought either by the company or by Watts Cooke personally. If the contract sued on was with the company, the suit should have been in

their name. If it was a contract with Cooke, it must have been with him either in his representative capacity or his individual capacity. If the former, the suit should have been brought in the name of the party whom he represented. If the latter, then he should have sued in his own private character. The receiver of a corporation takes all his rights of action through the corporation, and in all questions of title he represents the corporation. High on Receivers, §§ 315, 316, 318; *Curtis* v. *Leavitt*, 15 N. York, 44.

2. Waiving all questions as to the title acquired by Cooke in the property and funds of the company in New Jersey, the question arises what relation he acquired *in this state* to the contract between the town and the company—1st. The contract was an *asset* of the company in this state, the *situs* of which was here, it being a special contract made in Connecticut, with Connecticut parties, capable of execution nowhere else, and governed by our laws. It comes, therefore, within the distinction referred to in *Atwood* v. *Protection Ins. Co.*, 14 Conn., 561, between ordinary debts which have no *situs* and contracts which from their nature have locality. It is like a valuable lease of personal property situated here and not removable. Assuming that Cooke could bring property and money of the corporation into this state, and pay it out to protect or improve this asset, he did not thereby acquire a title in the asset as against creditors here. *Holcomb* v. *Phelps*, 16 Conn., 134; *Paine* v. *Lester*, 44 id., 196, 203; *Taylor* v. *Columbian Ins. Co.*, 14 Allen, 354; Story Confl. Laws, §§ 514, 514a. He does not acquire title to it as *assignee* in insolvency, for there has been no assignment. The whole proceeding in New Jersey was *in invitum*, and by operation of law. He is not a *bonâ fide* purchaser with his own funds; and viewed as trustee in behalf of creditors, he would hold it as property of the insolvent; all which under our laws is liable to creditors in this state. *Ensworth* v. *Davenport*, 9 Conn., 393; *Bray* v. *Wallingford*, 20 id., 419; *Naylor* v. *Fosdick*, 4 Day, 150. Hence rents from such a lease, or profits realized from such contracts, would be assets of the party having the legal title here, and as such liable to credit-

ors here. 2 Wms. Exrs., §§ 1498, 1499; *Richmondville Manf. Co.* v. *Prall*, 9 Conn., 487. The receiver's appointment makes no change in contract obligations, and no suits can be sustained by him except what could be sustained by the insolvent. High on Receivers, §§ 240, 242; *Hope Mut. Life Ins. Co.* v. *Taylor*, 2 Rob., N. Y., 278.—2d. It is not disputed that Cooke built the bridge under the contract with the company. It is not claimed that he and the towns made any new contract. He had no power from his court to make any *new contracts*, but simply to *carry out and complete* such as he might find to have been made by the company. If any thing is established by admission and by proof in this case, it is that the bridge was built under the contract with the company, and that the money sued for is part of the contract price for performing it. But the work having been done under the contract in the name of the company, and the contract never having been assigned, suit for the contract price must be brought in the name of the company. Receivers' suits are no exception to this rule. High on Receivers, § 209; *Curtis* v. *Leavitt*, 15 N. York, 44; *Freeman* v. *Perry*, 22 Conn., 617. Again, the work having been done under a special contract, suit for the contract price must be in special assumpsit, setting out the contract sued on. This action being in general assumpsit only, the court should have dismissed it on the proofs. *Welles* v. *Cowles*, 4 Conn., 182, 190.

3. As to the estoppel. The case finds that the towns when factorized disclosed that the money in their hands was due to the Watson Manufacturing Company. A copy of the garnishee process, with the officer's return, showing this disclosure, was served on Cooke's attorney, August 6th. The suit was returned to the September term of the court, and remained on the docket until December, when judgment was taken, the garnishees were found indebted, and execution was issued, and demand made on the defendants. During all this time no notice had been given to the defendants by either Cooke or his attorney that they had erred in their disclosure or that Cooke claimed the money. The case finds

that if such notice had been given the defendants would not have paid over on execution; but not having notice they did pay it in obedience to the legal process. There is no claim or pretence of bad faith on the part of the defendants. The subsequent refusal of New Haven to pay was not until after notice. We say that, under the facts so found, Cooke is estopped to sue for the amount so paid as due to himself. It is entirely unnecessary to cite authorities in support of this principle of estoppel so well settled in this state.

4. The defendants having paid the money over in good faith on execution, are protected from any further claim on it by statute. Gen. Statutes, p. 465; *Worthington* v. *Hosmer*, 1 Root, 192; *Hooper* v. *Benson*, id., 545; *Cutler* v. *Baker*, 2 Day, 498; *Culver* v. *Hall*, 20 Conn., 409, 415; *Palmer* v. *Woodward*, 28 id., 251; Story Confl. Laws, §§ 549, 550.

*S. L. Bronson* and *R. G. Osborn*, for the defendant in error.

PARK, C. J. The only real question in this case is, in regard to the capacity of the plaintiff to maintain the suit; and this question has been substantially determined by the cases of *Pond* v. *Cooke*, 45 Conn., 126, and *Blake Crusher Co.* v. *Town of New Haven*, 46 Conn., 473.

In the case of *Pond* v. *Cooke* it appeared that the Watson Manufacturing Company, a corporation located in the state of New Jersey, made a contract with the towns of New Haven and Orange for the construction of an iron bridge over West River, a stream of water dividing the two towns; that after the contract was made and before any thing was done under it the company became insolvent, and Watts Cooke was appointed a receiver by the proper court in the state of New Jersey, to settle the estate of the company, and distribute its effects *pro rata* among its creditors; that the receiver and the creditors of the estate were of opinion that it would be for the best interest of all concerned that the contract of the company with the towns named should be performed; that the receiver so informed the towns, and

that they assented; that he then purchased materials for the construction of the bridge, using for the purpose the funds of the estate, and brought the same into this state prepared for use in the erection of the bridge; and that these materials were attached by the Blake Crusher Company, a corporation located in this state, and a creditor of the Watson Manufacturing Company.

On these facts it was holden by this court that the attachment of the Blake Crusher Company was of no avail; that the property was in the hands of the receiver to be disposed of in the settlement of the estate according to the law of the state of New Jersey.

In the case of *Blake Crusher Company* v. *Town of New Haven*, it appeared that after the receiver had erected the bridge under the contract with the towns, for the benefit of all the creditors, using the funds of the estate for the purpose, the Blake Crusher Company attached, by a factorizing process, the debt due from the town of New Haven, and again it was holden by this court that the attachment was of no avail; that if the property itself could not be holden by the attachment in the first suit, the debt growing out of the disposition of the same property could not be held by the attachment.

The debt owed by the defendants in this suit grew out of the same transaction, and stands precisely like the debt in the last named case in all respects whatsoever; and if the Blake Crusher Company were unable to take from the present plaintiff the debt in that case, how can they prevent him from recovering the debt now under consideration?

But it is said that the cases of *Riley* v. *Riley*, 3 Day, 74, *Upton* v. *Hubbard*, 28 Conn., 285, and *Hedenberg* v. *Hedenberg*, 46 Conn., 37, hold that a foreign receiver or assignee cannot maintain a suit in this state for a debt which has been attached by a creditor of the foreign insolvent, and especially if such creditor is a citizen of this state. The distinction between those cases and the present was fully considered in the former cases growing out of the same transaction, and further comment is unnecessary. We will remark, however,

that if the plaintiff cannot enforce payment of the indebtedness in question, it is difficult to see by whom it can be done. The former cases hold that no creditor of the Watson Manufacturing Company can do it, and it is clear that the company itself cannot move in the matter, because they never owned the property out of which the debt arose. It was purchased by the receiver with the funds of the estate after all the assets of the company had gone into his hands. The receiver held the property in trust for all the creditors; and when it was transformed into a debt its original character attached to the indebtedness. The property was simply changed from one form into another.

It is said however by the defendants that, as the contract under which the bridge was built was the contract of the Watson Manufacturing Company and not of Watts Cooke as receiver, and as no new contract was made but all that was done by the receiver was done under that contract, it follows that the money due for the performance of the contract was due to the company and not to the receiver. There is an utter fallacy in this reasoning. Whatever rights the company had under this contract had passed to the receiver by the assignment. It is not necessary to consider the effect of this assignment as against creditors here, as there was nothing due the company from the towns. The rights of the company were not to receive money, but to go on and build the bridge and earn the money. On the failure of the company this right, in the condition of the company, was practically of little or no value as an asset. Clearly it was of no value as an asset which creditors in this state could get the benefit of by attachment. In this state of things the receiver, having obtained legal authority to go on as receiver and build the bridge, conferred fully with the committees of the two towns, so that all the facts were fully understood by them; and it is found "that they were willing and consented to have the receiver go on and finish the same, and understood that the contract was being performed by the receiver for the benefit of the creditors." Surely, upon these facts it can not be seriously contended that the contract price for the construc-

tion of the bridge was not to go to the receiver, but was open to the attachment of creditors of the insolvent company.

It is further claimed by the defendants that as they paid the debt to the officer upon the execution, they were thereby discharged from all further liability, under the statute, Gen. Statutes, p. 465, sec. 53. That statute is as follows:—"The taking of any effects or debt, by judgment of law, out of the hands of an agent, trustee or debtor of the owner thereof, by process of foreign attachment, shall forever discharge such garnishee." But this statute has reference solely to a discharge of the claim of the judgment debtor. The judgment debtor was the Watson Manufacturing Company, and that company is making no claim on these defendants. If it should do so undoubtedly the defendants could take advantage of this statute in their defence. The debt was factorized as a debt due that company. It was really a debt due the present plaintiff. The garnishee must have been factorized as the trustee or debtor of the "owner." That owner was Watts Cooke as receiver. His rights could not be affected by the proceeding.

It is again claimed that the plaintiff is estopped from asserting his rights as owner by his neglect to notify the defendants not to pay the money to the factorizing creditor. But there could be no legal obligation to give this notice, whatever it might have been fair or courteous for him to do. The law does not require every person to be on the alert to notice and warn people against claims made by others on his property. This court had already declared his right as receiver to hold against the creditors of the insolvent company the material which he had purchased as receiver for the construction of the bridge, and this of course involved his right in the same capacity to demand and receive the price which was to be paid by the towns for which it was constructed. It is almost incredible that the committees of the towns, with whom he had so much to do in the matter, and with whom he had conferred fully as to his going on as receiver to build the bridge, and who had given their assent to his doing it, should have been ignorant that he even claimed

these adjudicated rights or even in any doubt about it. If they desired to be entirely safe they could have taken a bond of indemnity from the creditor to whom the money was paid, or, under the provisions of a statute intended to meet this precise case, (Gen. Statutes, p. 464, sec. 45,) they could, when sued in an action of scire facias, have cited in the present plaintiff to defend his claim, in which case he would have been concluded by the judgment. There is nothing in this claim.

There is no error in the judgment complained of.

In this opinion the other judges concurred.